**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**BILLY HESS,**

      **Plaintiff,**

                                            **Civil Action 2:17-cv-518**
                                            **Chief Judge Edmund A. Sargus, Jr.**
      **v.**                                  **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Billy Hess ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security ("Commissioner") denying his

application for social security disability insurance benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors

(ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply

(ECF No. 12), and the administrative record (ECF No. 8).  For the reasons that follow, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM**

the Commissioner's decision.

## I.    BACKGROUND

Plaintiff protectively filed his application for Title II Social Security Benefits on

September 5, 2013, alleging that he has been disabled since March 23, 2012.  On February 17,

2016, following initial administrative denials of Plaintiff's applications, a hearing was held

before Administrative Law Judge Thomas Wang (the "ALJ").  (R. at 58-96.)  At the hearing,

Plaintiff, represented by counsel, appeared and testified.  (*Id.* at 62-89.)  Vocational Expert John

R. Finch, Ph.D. (the "VE"), also testified at the administrative hearing.  (*Id.* at 89-94.)

On February 25, 2016, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act.  (*Id.* at 41-57.)  The ALJ noted that Plaintiff met

the insured status requirements through December 31, 2012.  (*Id.* at 46.)  At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

gainful activity since March 23, 2012, the alleged onset date, though his date last insured of

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

December 31, 2012. (*Id.*) The ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, status-post laminectomy and fusion; history of chronic obstructive pulmonary disease (COPD); and obesity. (*Id.*) The ALJ also noted that Plaintiff has bilateral renal cysts and constipation, which he found to be nonsevere impairments. (*Id.* at 47.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) After step three of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff's] ability to push and pull is limited as per the exertional weight limits; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, stoop, and crouch; frequently crawl; occasional exposure to extreme cold; and can have occasional exposure to irritants such as fumes, odors, dust, and gases.

(*Id.* at 47-48.)

In determining Plaintiff's RFC, the ALJ assigned the opinion of Arsal Ahmad, D.O., Plaintiff's treating physician "little weight" "because it is inconsistent with the medical evidence of record and it was rendered more than two years after [Plaintiff's] date last insured and does not indicate what period it is applicable to." (R. at 50.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. The ALJ also recognized that Plaintiff was a younger individual at 45 years old at the time of the hearing with a high school education. The ALJ ultimately determined that, considering his age, education, work experience and his RFC, Plaintiff was capable of performing other work that exists in significant numbers in the national

economy.  (*Id.* at 51.)  He therefore concluded that Plaintiff was not disabled under the Social

Security Act.  (*Id.* at 52.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

final decision of the Commissioner.  Plaintiff timely filed this action for judicial review.

## II.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper,*

*Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that

finding 'even if there is substantial evidence in the record that would have supported an

opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v.*

*Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial  evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to  follow its own regulations and where that error prejudices a claimant on the merits or deprives  the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.  2007).

## III.    ANALYSIS

In his Statement of Errors, Plaintiff raises three contentions of error.  In his first contention of error, Plaintiff contends that the ALJ failed to properly evaluate the opinion of Dr. Ahman, his treating physician.  In his second contention of error, he challenges the ALJ's assessment of his credibility.  In his final contention of error, Plaintiff maintains that, although the ALJ found that Plaintiff did not engage in substantial gainful employment during the relevant period, the ALJ erroneously alluded to that the activity as an indication that he was capable of performing work on a sustained basis.  The Undersigned addresses each of these contentions of error in turn.

### A.  Treatment of Plaintiff's Treating Physician's Opionion

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Dr. Arsal Ahmad, D.O., Plaintiff's treating physician, opined that Plaintiff is limited to a severely reduced range of sedentary work due to his severe impairments. Dr. Ahmad completed a physical capacities evaluation form on February 13, 2015, over two years after Plaintiff's date last insured of December 31, 2012. Dr. Ahmad opined that Plaintiff is able to stand for 15 minutes at one time for a total of two hours, per eight-hour work day; able to walk five minutes

at one time for a total of one hour total each work day; and able to sit for 20 minutes at one time, for a total of four hours per eight-hour work day. Dr. Ahmad also opined that Plaintiff is unable to lift any amount of weight; unable to use hands to push/pull; unable to bend, squat, crawl, climb steps, or climb ladders; unable to reach above shoulder level. Dr. Ahmad concluded that Plaintiff is likely to deteriorate if placed under the stress associated with a job. Finally, Dr. Ahmad stated that Plaintiff was limited due to chronic low back pain and poor results from a lumbar fusion. (R. at 384-85.)

The ALJ rejected Dr. Ahmad's opinion because it was inconsistent with the medical evidence of record, was rendered more than two years after Plaintiff's date last insured, and it did not indicate the period of time to which it applied. (R. at 50.) Plaintiff claims that the ALJ primarily discredited Dr. Ahmad's opinion because it was provided after the date last insured and insists that the Commissioner cannot reject the opinion of a treating physician solely because it was contained in a report after the date last insured. He relies heavily on *Gambill v. Bowen*, 823 F.2d 1009, 1013 (6th Cir. 1987) in support of his assertion that the ALJ erred in this regard. The holding of *Gambill*, however, is not as broad-sweeping as the Plaintiff suggests. The Court of Appeals found that it was error for the district court to discount a treating physician's second opinion because it was prepared after Plaintiff's insured status had expired. *Id.* The Court noted that the second report of the treating physician clarified a statement in the earlier report and did not modify the treating physician's earlier findings. *Id.* The court did not, as Plaintiff urges, create a bright-line, categorical standard that the ALJ may never discount a treating physician's opinion if it rendered after a claimant's date last insured.

Indeed, "evidence relating to a time outside the insured period is only minimally probative . . . but may be considered to the extent it illuminates a claimant's health before the

8

expiration of his insured status.) *Nagle v. Comm'r of Soc. Sec.*, No. 98-3984, 191 F.3d 452 (6th

Cir. 1999) (unpublished) (citations omitted).  The applicable regulations do not require an ALJ to

five any special consideration to opinions given outside of a claimant's insured status.  *Johnson*

*v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013) (citing 20 C.F.R. §

404.1527(d)(3)).

The ALJ properly discounted Dr. Ahmad's opinions to the extent they were provided

after Plaintiff's date last insured and substantial evidence supports this conclusion.  Plaintiff's

alleged onset date of disability was March 23, 2012.  His date last insured was December 31,

2012.  (R. at 65, 241.)  Dr. Ahmad did not assess Plaintiff's limitations until February 13, 2015,

over two years after the relevant period of disability.  *See Nagle*, 191 F.3d at *3.

Plaintiff also contends that the ALJ failed to provide good reasons for rejecting the

opinion of Dr. Ahmad.  Plaintiff's argument that the ALJ erred in by pointing out that Dr.

Ahmad did not indicate the period of time to which his opinion applied is intertwined with his

contention regarding the weight the ALJ gave the opinion because it was provided after the date

last insured.  Although Dr. Ahmad indicated in his report that Plaintiff "is limited due to chronic

back pain and poor results from lumbar fusion," (R. at 385), these comments, without more, do

not necessarily relate back to the relevant time period in which he had the surgery.  Indeed,

because the report was created more than two years after the date last insured, Dr. Ahmad could

have been describing only deterioration in Plaintiff's condition as a result of the lumbar fusion.

Certainly, because Dr. Ahmad did not begin treating Plaintiff until after the relevant time period,

and although Plaintiff had an extensive history with Dr. Ahmad, his treatment consisted mainly

of prescribing medication for pain, his opinion could not have been based on his personal

9

assessment of Plaintiff's condition in 2012. *See Johnson*, 535 F. App'x at 506 (noting treating physician's opinion rendered well after date last insured likely described deterioration rather than plaintiff's condition during relevant period).

Finally, substantial evidence supports the ALJ's reason to discount Dr. Ahmad's opinion because it was inconsistent with the medical evidence of record. Plaintiff's contention that the ALJ "cursorily" noted that Dr. Ahmad's opinions were inconsistent with record is belied by the extended analysis the ALJ provided in his decision. (R. at 50-51.) Dr. Ahmad opined that Plaintiff could stand for only two hours, no more than 15 minutes at one time, and walk for one hour, no more than 5 minutes at a time, in an eight-hour workday. (R. at 384.) The ALJ explained in detail that these limitations were inconsistent with numerous records and treatment notes, including Dr. Ahmad's own notes, that showed that Plaintiff had normal gait (R. at 50, citing R. at 407, 410, 422, 425, 431, 434, 438, 442, 446, 470, 474.) The ALJ also relied on other treatment notes from 2013 that indicated Plaintiff denied "balance difficulties, gait disturbance, tripping or falls." (R. at 309, 315, 407, 414.) The ALJ further explained that despite Dr. Ahmad indicating that Plaintiff could not lift any amount of weight, hospital records immediately following Plaintiff's surgery only restricted him to lifting no more than 25 pounds, which was consistent with light work. (R. at 272.) The ALJ also noted that while Dr. Ahmad opined that Plaintiff was limited due to poor results from his lumber fusion, the evidence showed normal leg strength, ability to heel and toe walk, mild tenderness, minimal muscle spasm, and post-operative imaging showed good alignment. (R. at 30, 286, 287, 289, 291, 320, 321.) Because the ALJ explained his decision to give little weight to Dr. Ahmad's opinion, including the fact that the evidence did not support significant limitations, the ALJ's findings were supported by substantial

10

evidence. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (stating that

"this court has consistently stated that the Secretary is not bound by the treating physician's

opinions, and that such opinions receive great weight only if they are supported by sufficient

clinical findings and are consistent with the evidence"); 20 C.F.R. §§ 404.1527(c)(4)

("Generally, the more consistent a medical opinion is with the record as a whole, the more

weight we will give to that medical opinion.")

### B.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff also contends that the ALJ failed to consider that his persistent efforts to obtain

pain relief enhanced his credibility and erred when he found that Plaintiff was not entirely

credible.  The Undersigned concludes that the ALJ adequately assessed the record and Plaintiff's

testimony and determined that his complaints of severe pain were not entirely credible.

The ALJ acknowledged Plaintiff's testimony regarding his pain and limitations.  (R. at

48-49.)  He nevertheless concluded that although Plaintiff's impairments "could reasonably

cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible. . . ."  (R. at 49.)

"The ALJ's assessment of credibility is entitled to great weight and deference, since he

had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue*, 263 F. App'x 469,

475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997);

*Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the

ALJ's credibility determination, stating that "[w]e will not try the case anew, resolve conflicts in

the evidence, or decide questions of credibility" (citation omitted)).  This deference extends to an

ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain."

*Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). The United States Court of Appeals for the Sixth Circuit has established the following test for evaluating complaints of disabling pain. *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then examine:

> (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853.

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. The ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. Furthermore, in assessing credibility, the ALJ may consider a variety of factors including "the location, duration, frequency, and intensity of the symptoms; . . . [and] the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms . . . ." *Rogers*, 486 F.3d at 247.

Plaintiff maintains that the ALJ failed to consider that the Plaintiff's persistent efforts to obtain pain relief enhanced his credibility, as set forth in SSR 96-7p, which provides as follows:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and

12

persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

*Id.* Plaintiff maintains that he consistently complained of and sought treatment for back pain and treated with multiple doctors and specialists in an effort to relieve his pain, but that the ALJ did not account for these attempts in his explanation of Plaintiff's credibility. Plaintiff asserts that the ALJ merely said that the record does not contain the necessary medical evidence to support Plaintiff's claims of pain. The Undersigned disagrees.

In assessing Plaintiff's credibility, the ALJ considered the statements Plaintiff made to his physicians. Plaintiff asked Dr. Ogden about seeking temporary or permanent disability "despite how good he looks," which the ALJ noted was not consistent with poor results from surgery. (R. at 51, 287.) The ALJ also noted in his decision that Plaintiff himself requested a referral to a pain management clinic on the advice of his disability attorney. (R. at 49, 347) ("Requested referral to pain management. Filing for Disability[,] attny recommended pain clinic.") These statements to his physicians regarding his disability claim undermine Plaintiff's allegations of severe pain. The ALJ appropriately considered Plaintiff's motivation to obtain benefits when assessing Plaintiff's credibility.

Contrary to Plaintiff's contention, the ALJ assessed many of the factors under the controlling regulation. *See* 20 C.F.R. § 404.1529(c)(3) ("How we evaluate symptoms, including pain"). The ALJ explained that Plaintiff generally received routine and conservative treatment after his back surgery during the relevant period, consisting of medication, physical therapy and steroid injections. The ALJ properly noted that this conservative approach was not generally the

type of medical treatment one would expect for a totally disabled individual. (R. at 50.) *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir.2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir.2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period.") SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same).

The ALJ reasonably considered the factors under § 404.1529(c)(3) in determining that Plaintiff's subjective complaints of pain were not as severe as he alleged. The Undersigned finds no compelling reason for the Court to disturb the ALJ's credibility determination.

## C. ALJ's Consideration of Plaintiff's Work Activity

In his third contention of error, Plaintiff asserts that, although the ALJ deemed that Plaintiff did not engage in substantial gainful activity during the relevant period, he erroneously alluded that the activity indicated that he was capable of performing work on a sustained basis. Plaintiff cites the ALJ's references to a stipend Plaintiff received from the Veteran's Administration for staying with and caring for his grandparents. Plaintiff argues that that these references imply that the ALJ thought the stipend was equivalent to sustained gainful activity ("SGA"). The record does not support Plaintiff's speculation in this regard.

The ALJ appropriately considered that Plaintiff had work activity after the alleged onset date. The ALJ made plain that the work activity did not constitute disqualifying substantial

activity. The ALJ simply referred to the fact that Plaintiff was able to care for his grandparents as an indication that Plaintiff's daily activities had, at that time, been somewhat greater than Plaintiff had generally reported. (R. at 49-50.) The ALJ properly considered any part-time work. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.") Indeed, an ALJ is entitled to consider work that does not constitute SGA. *Norris v. Astrue*, 5:10–cv–127, 2011 WL 588349, at *5 (E.D. Ky. Feb. 10, 2011), aff'd, 461 F. A'ppx. 433 (6th Cir. 2012) ("There is nothing inconsistent with finding that [the claimant's] work did not amount to substantial gainful activity, but nevertheless considering it relevant in evaluating his credibility and RFC."); *Young v. Astrue*, No. 2:12–cv–0050, 2013 WL 4456250, at *14 (M.D. Tenn. Aug. 15, 2013) ("As for the claim that the ALJ improperly relied on plaintiff's part-time employment to discredit her credibility, it was entirely within the ALJ's discretion to consider plaintiff's part-time job as a daily activity in making her credibility determination.") adopted by 2014 WL 3724844 (M.D. Tenn. July 25, 2014), aff'd, No. 14–6075 (6th Cir. Feb. 26, 2015); *Fenner v. Comm'r of Soc. Sec.*, No. 3:12–cv–179, 2013 WL 2253573, at *6 (S.D. Ohio May 22, 2013) (finding that ALJ appropriately considered the claimant's employment history after the alleged disability onset date, even if it involved unsuccessful attempts to gain employment), adopted by 2013 WL 3168645 (S.D. Ohio June 20, 2013) (citations omitted).

The ALJ neither expressly nor impliedly equated Plaintiff's caregiving for his grandparents to SGA. For these reasons, the Undersigned concludes that the ALJ properly considered Plaintiff's part-time, paid work in caring for his grandparents.

## IV.    DISPOSITION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

> /s/ *Elizabeth A. Preston Deavers*
> ELIZABETH A. PRESTON DEAVERS
> CHIEF UNITED STATES MAGISTRATE JUDGE